**In re Vahid A. SHARIATI, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 468925).**

**No. 08–BS–276.**

District of Columbia Court of Appeals.

Argued Sept. 22, 2011.

Decided Nov. 10, 2011.

---

Vahid A. Shariati, pro se.

Catherine L. Kello, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, and Judith Hetherton, Senior Assistant Bar Counsel, were on the brief for the Board on Professional Responsibility.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

On April 18, 2007, Bar Counsel presented more than 100 asserted violations of the District of Columbia Rules of Professional Conduct involving the conduct of respondent, Vahid A. Shariati, in connection with eleven people.[1] Following extensive hearings before Hearing Committee Number Eleven (hereinafter "the Hearing Committee" or "Committee") over the course of four months, the Hearing Committee found that all but three of the charges were established by clear and convincing evidence, and on December 30, 2009, recommended to the Board on Professional Responsibility (hereinafter "the Board") that respondent be disbarred. Following its own extensive analysis, the Board issued its report and recommendation on July 30, 2010, concluding that the Hearing Committee's findings were supported by the record evidence on all but another three of the charges, and agreeing that respondent should be disbarred. The Board's recommendation is now before us. We adopt the Board's findings and its recommended sanction, other than the Board's determination that Bar Counsel had not proved that respondent violated Rule 3.4(b) with respect to his conduct with two clients. We conclude that substantial evidence supports a finding that respondent violated this rule as well. *See infra* at note 2. In addition, our recent

1. The charges include alleged violations of Rule 1.1(a) (a lawyer shall provide competent representation), Rule 1.1(b) (a lawyer shall service his client with skill and care), Rule 1.3(a) (a lawyer shall represent a client zealously and diligently within the bounds of the law), Rule 1.3(b)(1) (a lawyer shall not intentionally fail to seek the lawful objectives of a client), Rule 1.3(b)(2) (a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship), Rule 1.3(c) (a lawyer shall act with reasonable promptness in representing a client), Rule 1.4(a) (a lawyer shall keep a client reasonably informed), Rule 1.16(d) (a lawyer shall return unearned fees and surrender a client's papers upon termination of employment), Rule 3.4(b) (falsifying evidence), Rule 5.5(a) (a lawyer shall not engage in the unauthorized practice of law), Rule 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), Rule 8.4(d) (conduct seriously interfering with the administration of justice), and Rule 8.4(e) (a lawyer shall not state or imply an ability to influence improperly a government agency or official).

ruling in *In re Kanu*, 5 A.3d 1, 11–13 (D.C.2010), combined with the findings by the Committee that respondent repeatedly failed to respond to inquiries from Bar Counsel, supports a finding that respondent violated Rule 8.4(d) in connection with his representation of three clients irrespective of whether Bar Counsel obtained an enforcement order.

## I.

We herein summarize the Board's findings with respect to the eleven counts with which respondent was charged, including more than 100 violations of the rules of professional conduct.

### Count I (H.R./S.S.)

H.R. and her husband, S.S., retained respondent in June 2002, to seek visas for H.R.'s immediate family members in Iran to come to the United States. The Board concluded that substantial evidence supported the Committee's findings that respondent lied to H.R. when he represented to her that he had filed all of the necessary immigration applications, when in fact he had not. The Board found that there was insufficient evidence, however, to support the Committee's findings that respondent stated or implied that he could improperly influence a government official in order to assist them in gaining the visas.

### Count II (L.J.)

L.J. entered the United States in August 2001, on a temporary visa and retained respondent to represent her before the Immigration and Naturalization Service ("INS") in order to obtain asylum for herself and her son. The Board concluded that substantial evidence supported the Committee's findings that, after receiving a $1,500 retainer from L.J., respondent failed to file her asylum application within the required one-year time period and mis-represented to her that he had filed all of the papers and was waiting for her INS asylum interview. L.J. was also unable to reach respondent for several months.

### Count III (S.K.)

S.K. retained respondent to represent him in May 2002, in obtaining asylum and paid him $1,200. The Board concluded that substantial evidence supported the Committee's findings that respondent provided S.K. with fraudulent receipts representing them to be from government agencies to show that he had filed documents on S.K.'s behalf but that he had not actually filed. The Board found that there was insufficient evidence, however, to support the Committee's findings that respondent falsified evidence in connection with this representation.

### Count IV (A.N.)

A.N. retained respondent in March 2003, to assist him in obtaining permanent residence status for one family member and helping to bring another family member to the United States from Iran. The Board concluded that substantial evidence supported the Committee's findings that respondent provided A.N. with fraudulent receipts and lied to A.N. when he told A.N. that he had filed all of the necessary immigration applications.

### Count V (T.O.)

T.O. retained respondent in June 2003, to help bring her brother-in-law to the United States from Iran. The Board concluded that substantial evidence supported the Committee's findings that respondent never contacted T.O. or informed T.O. whether he had done anything on the brother-in-law's case. T.O. filed a complaint against respondent with the Office of Bar Counsel and filed suit against respondent in the Small Claims Branch of Superior Court to recover her legal fees.

Respondent subsequently failed to appear in court and, after being secured by the Marshal's service, gave T.O. a bad check. The trial court then ordered respondent to pay T.O. by money order, which he did.

### Count VI (H.R.)

H.R. and his wife retained respondent in the summer of 2002, to file their naturalization documents. The Board concluded that substantial evidence supported the Committee's findings that respondent lied when he told H.R. and his wife that he had completed and submitted the paperwork required for their application, and lied again when he told H.R. and his wife that the INS had lost their file. In fact, respondent had never sent an application to the INS.

### Count VII (M.J.A.)

M.J.A. retained respondent in the spring of 2002, to assist her in obtaining asylum and paid respondent $1,500. The Board concluded that substantial evidence supported the Committee's findings that respondent did not file M.J.A.'s asylum application within the one-year time limit and gave M.J.A. a "Notice of Action" document as proof that he filed her application, but which did not relate to her case.

### Count VIII (I.D.)

I.D. and his wife retained respondent in December 2002, to advise them on whether I.D. had to register with immigration authorities under a new regulation adopted after the September 11, 2001 attacks, and to represent them in obtaining permanent residency status in the United States. The Board concluded that substantial evidence supported the Committee's findings that respondent incorrectly advised I.D. that he was not required to register under the regulation, which put I.D. at risk of not being granted permanent residency status, and that respondent did not file any applications for permanent residency on behalf of I.D. and his wife.

### Count XI (A.S.)

A.S. retained respondent in 2002, to help him obtain an H–1B employment visa to bring his relative to the United States from Iran, and paid respondent $3,000. The Board concluded that substantial evidence supported the Committee's findings that respondent presented A.S. with a fraudulent letter from a company called American Health & Education Services, which indicated that the company had a job for A.S.'s relative. Substantial evidence supported the Committee's further findings that respondent lied to A.S. when he told A.S. that his relative's application had been approved.

### Count X (M.K.S.)

M.K.S. retained respondent in July 2003, to obtain a labor certificate and a green card for his sister and paid respondent $2,000. The Board concluded that substantial evidence supported the Committee's findings that respondent failed to keep M.K.S. informed about the status of the representation, did not respond to M.K.S.'s requests to refund the money, and that respondent did not perform the services that were the subject of the retainer agreement.

### Count XI (E.F./F.E.)

E.F. and his wife, F.E., retained respondent in April 2002, to obtain a work permit and permanent residency status for F.E. The Board concluded that substantial evidence supported the Committee's findings that approximately one year after he was retained, respondent provided F.E. with an INS case number to monitor the status of her case, but which did not actually relate to her case, and that the INS never processed an application for F.E.

## II.

"In a disciplinary case, this court accepts the Board's findings of fact unless they are unsupported by substantial evidence of record. This court reviews the Board's legal conclusions *de novo*. We shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted. The Board, in turn, is required to accept the factual findings of the hearing committee that are supported by substantial evidence in the record, viewed in its entirety. However, the Board owes no deference to the hearing committee's determination of ultimate facts, which are really conclusions of law." *In re White,* 11 A.3d 1226, 1228 (D.C.2011), *cert. denied,* — U.S. ——, 131 S.Ct. 2941, 180 L.Ed.2d 227 (U.S.2011) (internal citations and quotations omitted). *See also* D.C. Bar R. XI, § 9(g)-(h) (2006).

## III.

■ We are satisfied that there is substantial evidence to support the Board's findings of fact regarding each of the alleged violations by respondent.[2] The Board conducted a thorough review of the record, which included more than 300 findings of fact by the Hearing Committee, in a report that was nearly 100 pages long. The Hearing Committee conducted hearings over the course of fifteen days, during which ten of respondent's former clients testified. Bar Counsel called several witnesses, including respondent, a forensic investigator, an expert in immigration law and the successor counsel to several of respondent's clients, the chief of staff of the Service Center Operations for the United States Citizenship and Immigration Services, and a former law school classmate and a former paralegal of respondent.

■ We are also persuaded that the Board properly deferred to the Hearing Committee's extensive findings concerning respondent's credibility. The Hearing Committee devoted nearly twenty-five pages of its report to its findings that respondent was "a non-credible witness" who demonstrated a "lack of candor," "disrespect for the law," and "vindictiveness." Findings supporting those conclusions include that respondent provided a legal argument to the Committee that was without merit to excuse his incompetence, that he was evasive on the issue of his status as an attorney, that he illegally hired one of his clients, who had no work authorization, that he filed fraudulent forms with the INS, and that he tendered insufficient funds in settlement of a Small Claims Court proceeding.

■ Neither the Hearing Committee nor the Board sustained the allegation that respondent failed to respond to ethical complaints in the I.D., A.S., and M.K.S. matters in violation of Rule 8.4(d) based on an understanding that Bar Counsel could not charge a respondent with violating Rule 8.4(d) if Bar Counsel had not obtained an enforcement order. Bar Counsel argues that in our recent ruling in *In re Kanu, supra,* 5 A.3d at 11–13, we held

---

2. The Board adopted every violation the Hearing Committee found with only a few exceptions. The Board did not sustain the Hearing Committee's findings that respondent falsified evidence in the S.K. and M.J.A. matters, in violation of Rule 3.4(b). Bar Counsel argues that, in so doing, the Board ignored relevant findings by the Committee including that the Committee credited the testimony of both S.K. and M.J.A. that respondent included false information in their respective applications. We agree with Bar Counsel that the Hearing Committee's findings fully support the Committee's conclusion that respondent falsified evidence in violation in Rule 3.4(b).

that Bar Counsel need not obtain an enforcement order before charging respondent with violating Rule 8.4(d). We agree that our ruling in *In re Kanu*, combined with the findings by the Committee that respondent failed to respond to inquiries from Bar Counsel, support a finding that respondent violated Rule 8.4(d) in connection with the I.D., A.S., and M.K.S. matters irrespective of whether Bar Counsel obtained an enforcement order.

## IV.

■ Respondent makes a series of broader exceptions, including the violation of his constitutionally-guaranteed right of due process, his right to counsel, and that Bar Counsel engaged in a vindictive prosecution against him. These claims were properly determined by the Board to be without merit. There is no record support for respondent's claim that he is the victim of a vindictive prosecution, that he took any steps to seek appointed counsel pursuant to Board Rule 18.5 at any time during the lengthy proceedings, or that the procedures and conduct of the Hearing Committee were in any way unfair.

■ In addition, respondent now raises another set of arguments, including the claim that there existed no attorney-client relationship with A.S., M.K.S., A.N., or T.O., that it would have been illegal for respondent to further the illegal goals of his clients, or that the credibility finding by the Hearing Committee violated respondent's constitutional rights. We agree with Bar Counsel that respondent has waived his right to make these arguments by failing to raise them below, and that in any event, they are without merit and

3. We note that we were especially troubled by the Hearing Committee's findings that respondent, according to his own testimony, used a District of Columbia subpoena as an official document to take some kind of action

unsupported in the record. *See In re Holdmann*, 834 A.2d 887, 889 (D.C.2003).

## V.

"The Board on Professional Responsibility's proposed sanction comes to this court with a strong presumption in favor of its imposition. Where this court has concluded that the attorney's conduct falls into a category of dishonesty of a flagrant kind it has held disbarment to be the appropriate sanction." *In re White, supra*, 11 A.3d at 1233. Whether the recommended disciplinary action is appropriate depends on a review of the respondent's violations in light of relevant factors, including "the nature of the violation," "the mitigating and aggravating circumstances," "the need to protect the public, the courts, and the legal profession," and "the moral fitness of the attorney." *In re Cleaver–Bascombe*, 986 A.2d 1191, 1195 (D.C.2010) (internal quotation marks omitted).

■ We agree with the Board that this decision "need not be prolonged by extensive discussion of the [ ] recommendation that respondent be disbarred and required to make restitution to his clients … as a condition for reinstatement." As the Board adequately explained, the recommendation of disbarment is based upon respondent's multiple violations in eleven client representations, the dishonest and deceitful nature of his conduct, as well as "his lack of remorse."[3] *See In re White, supra*, 11 A.3d at 1233; *In re Cleaver–Bascombe, supra*, 986 A.2d at 1191; *In re Goffe*, 641 A.2d 458, 468 (D.C.1994). Accordingly, it is

against his clients in Iran. We agree with the Hearing Committee that this conduct "pose[s] a substantial threat of serious harm to the public" and to these clients in particular.

ORDERED that Vahid A. Shariati is disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion, and that as a condition of reinstatement, respondent must make restitution of fees paid to him, with interest at the legal rate, to his former clients or to the Client Security Trust Fund. *See* D.C. Bar R. XI, § 14(f).

*So ordered.*